437 P.2d 978

Clyde William MARSH, Sr., and Anna Christine Marsh, his wife, Appellants,

v.

R. B. HAWKINS and E. M. Hawkins also known as E. M. Campbell, Individually and as Partners of Hawkins & Campbell and Hawkins and Campbell, a partnership, Appellees.

No. 1 CA–CIV 517.

Court of Appeals of Arizona.

Feb. 28, 1968.

Rehearing Denied April 1, 1968.

Review Denied April 30, 1968.

Riddel & Riddel, by Harold Riddel, Phoenix, for appellants.

James E. Flynn, Phoenix, for appellees.

McGUIRE, Superior Court Judge.

This is an action brought by Clyde William Marsh, Sr. and Anna Christine Marsh, his wife, against R. B. Hawkins and E. M. Hawkins, also known as E. M. Campbell, and the partnership known as Hawkins and Campbell. Defendants are licensed process servers under the provisions of A.R.S. § 11–445, as amended. It is alleged that defendants made a false return of service of summons upon the plaintiffs herein in Case No. 147716, Maricopa County, whereby they suffered damages.

Judgment was rendered against plaintiffs after motion to dismiss their amended complaint, in three counts, was granted. For the purposes of this appeal the allegations of the amended complaint must therefore be taken as true.

## CONTRACT THEORY (COUNT I)

The first count is based on the theory that by reason of the duties imposed upon persons who accept the license as private process servers, a contractual relationship exists between such process servers and the defendant whom they certify they have served process upon, and that such defendants are third-party beneficiaries. This theory is unsound because no contractual relationship exists. A.R.S. § 11–445, subsec. F provides as follows:

"F. Private process servers duly appointed or registered pursuant to rules established by the supreme court may serve all process, writs, orders, pleadings or papers required or permitted by law to be served prior to, during, or independently of, a court action, including all such as are required or permitted to be served by a sheriff or constable, except writs or orders requiring the service officer to sell, deliver or take into his custody persons or property, or as may otherwise be limited by rule established by the supreme court. A private process server is an officer of the court. * * * As amended Laws 1962, Ch. 139, § 1; Laws 1963, Ch. 3, § 2."

This statute does not purport to create a contractual relationship between the process server and the individual served. The appellants have cited no decision supporting this theory of their complaint and their arguments are not convincing. We hold that the trial court properly dismissed count one for failure to state a claim.

## COUNTS TWO AND THREE

The second count alleges that the process server's affidavit was "erroneous, untrue, and the said defendant was mistaken in making the said AFFIDAVIT." It is to be noted that it is not charged that the process server was negligent in any respect; this count is predicated on a species of strict liability.

The third count alleges that the process server knew the affidavit "to be false and contain false statements or she was ignorant of the validity of the said affidavit and the truth of the content [sic] thereof." The appellants argue that this count sounds in "fraud."

It is alleged in both of these counts that an affidavit of personal service as to the plaintiffs was filed by the defendant in Case No. 147716 on or about March 15, 1963, but that in truth and in fact they were never served in the action and that the plaintiffs did not learn the truth regarding such false return of service until September of 1965. This action was filed on April 6, 1966, and the defendants raise the statute of limitations as a defense.

The original action in which the false return was allegedly filed went to default

judgment against the plaintiffs herein, but on their motion, showing that they had never been served with summons, the judgment was vacated. Upon appeal to the Court of Appeals, the action of the trial court was upheld. Review by the Supreme Court was denied. Occidental Life Ins. Co. v. Marsh, 5 Ariz.App. 74, 423 P.2d 150 (1967) (review denied March 14, 1967).

## TO WHAT STANDARD IS A PRIVATE PROCESS SERVER HELD?

We first must consider whether counts two and/or three state a cause of action and in order to do so we must determine to what standard of liability a private process server is to be held.

■ We agree with the appellee that we are not here concerned with the action of fraud, as that common law action has been structuralized in this state. Moore v. Meyers, 31 Ariz. 347, 253 P. 626 (1927). We are, however, concerned with a claim of false service of process, an action not unknown to the common law. While a private process server is a recent arrival on the scene, he is under our statute "an officer of the court." A.R.S. § 11–445, subsec. F. As such, we believe he is subject to substantially the same liability as imposed by the common law upon a sheriff or constable when performing similar functions.

At common law, we find a broad spectrum of case law, establishing a minimum standard for a process server ranging from strict liability to a requirement that the plaintiff must show that the server acted willfully. 80 C.J.S. Sheriffs and Constables § 114, at 322–324. An "intention to defraud" has been held necessary to sustain an action of false return in the early case of Sutherland v. Cunningham, 1 Stew. 438 (Ala. 1828). David v. Larochelle, 296 Mass. 302, 5 N.E.2d 571 (1936) held the action proper where the return was unintentionally false in that only a blank form and not a true copy of summons had been served. State ex rel Moore v. Morant, 266 S.W.2d 723 (Mo.App.1954) establishes strict liability for a mistaken return. The court in *Morant* said:

"Appellants ask whether a constable in undertaking to make service of process under the usual place of abode provision of the statute, Section 506.150 RSMo 1949, V.A.M.S., must go armed with birth records and affidavits establishing the age and kinship of the members of the defendants' family. The answer is that a constable must ascertain at his peril the age of the person served and his membership in the family of the defendant before making a return showing service under this provision of the statute. The integrity of the whole judicial establishment depends upon the accuracy and reliability of returns of service of process. A constable's return, like that of a sheriff's, is conclusive upon the parties to the suit. Its truth cannot be controverted by parol evidence when the effect will be to set aside a judgment based thereon. Majewski v. Bender, Mo.App., 237 S.W.2d 235, and cases cited. The public is entitled to rely upon the faithful performance of official duty and consequently *the law is strict in holding officers to a high degree of accountability for the efficient and true service of process.* State ex rel. Polster v. Miles, supra, 149 Mo.App. 638, 129 S.W. 731, State ex rel. Armour Packing Co. v. Dickmann, 146 Mo.App. 396, 124 S.W. 29, 80 C.J.S. Sheriffs and Constables § 52, page 227. See State ex rel. Rice v. Harrington, 28 Mo.App. 287, for another instance in which we held that an officer acts at his peril in making a return of process." (Emphasis added) 266 S.W.2d at 726.

■ The reason given by the Missouri court for holding a process server to such strict accountability, an erroneous return of process is conclusive on the parties, is not the law in Arizona. In this state, the return may be impeached by a party if clear and convincing evidence of the return's falsity is presented to the court. This was done in the instant case. Occidental Life Ins. Co. of Calif. v. March, 5 Ariz.App.

74, 423 P.2d 150 (1967). We decline to hold a process server an absolute insurer of the truth of the return. The process server should be held to a degree of liability commensurate with his responsibility and he is liable for negligence in making a false return as well as for the willful making of such return.

■ Therefore, Count 3 states sufficient facts to permit recovery but Count 2 as filed does not.

The rule in Arizona is that after the reversal of the judgment and remand of the case for further proceedings, either party may amend. Harbel Oil Co. v. Steele, 1 Ariz.App. 315, 402 P.2d 436 (1965); and, see Temp-Rite Engineering Co. v. Chesin Construction Co., 3 Ariz.App. 229, 413 P.2d 288 (1966).

The scope of permissible amendment is set forth in Rule 15(c) of the Rules of Civil Procedure, 16 A.R.S.

## WHICH STATUTE OF LIMITATIONS APPLIES?

The defendants argue that the applicable statute of limitations is A.R.S. § 12–542, which reads in pertinent part:

"There shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions:

\*　　\*　　\*　　\*　　\*　　\*

"3. For trespass for injury done to the estate or the property of another."

The plaintiffs contend that the applicable statute is A.R.S. § 12–543(3) reading:

"There shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions:

\*　　\*　　\*　　\*　　\*　　\*

"3. For relief on the ground of fraud or mistake, which cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

■ At common law, an action for false return was considered an action in trespass

on the case Whitaker v. Sumner, 7 Ackering 551, 19 Am.Dec. 298 (Mass.1829). Both our venue and limitation statutes have come to us from Texas. Pride v. Superior Court, 87 Ariz. 157, 161, 348 P.2d 924 (1960); Hagenauer v. Detroit Copper Mining Co., 14 Ariz. 74, 92, 124 P. 803 (1912). In connection with our venue statute, we have followed Texas decisions which have held that the word "trespass" includes action known at common law as trepass on the case. Pride v. Superior Court, supra, at 161, 348 P.2d 924. By analogy we reach the same result here. We hold that A.R.S. § 12–542 is the pertinent statute.

## WHEN DOES THE STATUTE COMMENCE TO RUN?

If the applicable statute of limitations commenced to run at the time of the filing of the alleged false return on or about March 15, 1963, this action was filed too late. If the statute commenced to run from date of discovery, a cause of action was stated.

The Arizona Supreme Court in the landmark case of Tom Reed Gold Mines Co. v. United Eastern Mining Co., 39 Ariz. 533, 8 P.2d 449 (1932), held that the limitation period for underground trespass intentional or inadvertent does not begin running until the plaintiff knows or has reasonable cause to know facts constituting the trespass. In *Tom Reed* the Supreme Court with approval quoted the case of Spallholz v. Sheldon, 158 App.Div. 367, 143 N.Y.S. 417, which defined constructive fraud as:

" 'Acts, statements, or omissions which operate as virtual frauds on individuals, or which, if generally permitted, would be prejudicial to the public welfare and yet have been unconnected with any selfish or evil design.' Spallholz v. Sheldon, 158 App.Div. 367, 143 N.Y.S. 417; Id., 216 N.Y. 205, 110 N.E. 431, Ann.Cas. 1917C 1017," 39 Ariz. at 540, 8 P.2d at 451.

*Tom Reed* held that the removal of ore through underground trespass was actual "fraud" when done intentionally and

"constructive fraud" when done inadvertently. The court was able to find all of the traditional elements of fraud in an unintentional underground trespass, and applied the statute of limitation pertaining to "fraud" to this action. This decision has never been repudiated by the Supreme Court, but subsequent decisions purportedly following it have taken a different turn.

In Griffith v. State of Arizona, 41 Ariz. 517, 20 P.2d 289 (1933), our Supreme Court held that a cause of action brought by the state against a county assessor and his bonding company for defalcation as to public monies was a "liability created by statute" as to which the one year statute of limitations applied (41 Ariz. at 524, 20 P.2d 289). At the same time, the court, in applying the "rule" of *Tom Reed Gold Mines* held that if the defalcation involved a "fraudulent concealment by one occupying a position of trust," the statute would not run until discovery or until the injured party "is put upon reasonable notice of the breach of trust." 41 Ariz. at 528, 20 P.2d at 293. The court explained the *Tom Reed* case:

> "The test, therefore, is not whether the action is in form one of fraud, but whether it seeks relief on account of fraud in the original transaction. This in substance is our decision in Tom Reed Gold Mines Co. v. United Eastern Mining Co., supra." 41 Ariz. at 528, 20 P.2d at 293.

In Taylor v. Betts, 59 Ariz. 172, 124 P.2d 764 (1942) our Supreme Court was concerned with a complaint that charged members of the State Corporation Commission with "wilfully and unlawfully" issuing a certificate to an insurance company knowing, or having reason to know, that they had "wilfully concealed from the legislature" the facts concerning the insolvency of the company (59 Ariz. at 174, 127 P.2d 764). Again the court held that the liability was one created by statute (59 Ariz. at 179, 124 P.2d 764) and:

> " * * * that no matter what the form of action is, if it is based on a fraudulent concealment by one occupying a position of trust, the statute does not begin to run until the other party discovers or is put upon reasonable notice of the breach of the trust." 59 Ariz. at 180, 124 P.2d at 767.

■ Taking these three cases together, we believe they are broad enough to cover the tort here alleged. As a public officer, a process server owes a duty not only to the party for whom he is serving process but also to the party served. The very nature of the act involved lends towards concealment. Proliferation of litigation is one of the hallmarks of this day and age. Clerk's offices are typically inundated by filing of all sorts. From the mere filing alone, there is slim chance that the person who has never actually been served will have any notice of what has occurred. We regard this act to be analogous to an "underground trespass," and hold that the statute of limitations does not run until "the other party discovers or is put upon reasonable notice of the breach of the trust." Taylor v. Betts, supra. This rule applies to all actions for false return.

■ The mere fact that a person knows that an action has been filed against him does not impose on him any duty to search the record at intervals to see whether a false return of service of summons has been made.

## IS THE DOCTRINE OF RES JUDICATA APPLICABLE?

Defendants have raised a question of res judicata based upon the following facts. The original complaint was filed on April 6, 1966, motion to dismiss with prejudice was argued on July 6, 1966, and on July 8, the court made this minute entry:

> "Defendants' Motion to Dismiss having been taken under advisement, and the Court being duly advised in the premises,
>
> "IT IS ORDERED granting Defendants' Motion to Dismiss."

On July 13, 1966, the court ex parte made a further minute entry:

"ORDERED Nunc Pro Tunc Add the following sentence to the minute entry dated July 8, 1966:

"IT IS FURTHER ORDERED granting Plaintiff fifteen (15) days from July 8, 1966, within which to file amended complaint."

The amended complaint was filed July 20, 1966.

■■ A minute entry dismissing a complaint is an interlocutory order and does not operate as res judicata. The matter remains pending before the court which may freely permit amendments until the court by a written and signed judgment dismisses the action. Rule 58(a), as amended, Rules of Civil Procedure, 16 A.R.S., requires all judgments to be in writing and signed by the judge.

The judgment of the Superior Court of Maricopa County is reversed and the case is remanded for further proceedings not inconsistent herewith.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge JOHN A. McGUIRE was called to sit in his stead and participate in the determination of this decision.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

HATHAWAY and MOLLOY, Judges (specially concurring).

■ The undersigned judges, constituting a majority of the court, concur in the foregoing opinion of Judge McGuire with the exception of that portion thereof dealing with the possibility of amending the complaint to state a cause of action in negligence. No attempt has been made as yet to amend the complaint and we believe this court should refrain from expressing an opinion on what the applicable law would be if such a claim were to be made. Phoenix Metals Corp. v. Roth, 79 Ariz. 106, 284 P.2d 645 (1955).